## GUNN v. DELHI TOWNSHIP.

1. DEDICATION—DEFINITION.
    Dedication is an appropriation of land to some public use, accepted for such use by or in behalf of the public.

2. SAME—STATUTES—COMMON LAW.
    Statutory dedication vests fee title in the county, whereas common-law dedication creates only an easement in the public.

3. SAME—STATUTORY DEDICATION.
    Statutory dedication of highway is not met where township never formally accepted a plat, the required certificate was not made, and there is no evidence the plat was properly recorded; hence, there was no vesting of fee title in the township (CLS 1961, § 560.3; CL 1948, § 560.11).

4. SAME—STATUTES—ATTEMPTS—COMMON LAW.
    An unsuccessful attempt at statutory dedication does not preclude a common-law dedication.

5. SAME—COMMON LAW—RIGHTS ACQUIRED—SEWERS.
    Common-law dedication of land for use as a public road or highway by user *held*, to convey to public authorities and public utilities the right to construct sewer lines thereunder (CL 1948, § 247.183).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 23 Am Jur 2d, Dedication § 1.
[2] 23 Am Jur 2d, Dedication §§ 57, 58.
[3] 23 Am Jur 2d, Dedication §§ 23–27.
[4] 23 Am Jur 2d, Dedication § 34.
[5] 23 Am Jur 2d, Dedication § 65.
[6] 25 Am Jur, Highways §§ 198–201.
[7] 27 Am Jur 2d, Eminent Domain § 266 *et seq.*
[8, 10] 26 Am Jur 2d, Eminent Domain § 157 *et seq.*
[9] 5 Am Jur 2d, Appeal and Error § 822.
[11] 5 Am Jur 2d, Appeal and Error §§ 964, 965.
[12] 5 Am Jur 2d, Appeal and Error § 1009 *et seq.*

6. HIGHWAYS—USE FOR UTILITIES—STATUTE—SEWERS.

Statute which says that public utility companies and municipalities are authorized to construct and maintain various enumerated public utility facilities, including sewers, under any public road *held* not to confer or withdraw rights, but to be declaratory and regulatory of rights arising from the fact that a road is public (CL 1948, §§ 247.183, 247.185).

7. EMINENT DOMAIN—COMPENSATION—HIGHEST AND BEST USE.

Rule of compensation for highest and best use is a standard for measuring damages for a taking of land; suitability of land for various uses is immaterial to the proof of infringement of landowner's right by a taking of his land for a public use.

8. DRAINS—INTERFERENCE WITH USE OF LAND—EVIDENCE.

Finding of trial court that installation of sewer line had not caused damage to landowner by interfering with drainage of land *held*, correct by appellate standard, where landowner's testimony showed that land was draining as well after sewer was installed as it drained before, and that water standing in drains from his land was not being blocked by sewer pipes, and professional engineering testimony showed that a part of the land could not be adequately drained even without the sewer because of insufficient difference in elevation between land to be drained and bottom of existing drain.

9. APPEAL AND ERROR—CHANCERY CASES—RECORD.

Findings of the trial judge in equity cases are not disturbed unless, after an examination of the record, the appellate court would have arrived at a different result had it been in the position of the trial judge.

10. EMINENT DOMAIN—DUE PROCESS—HEARING—SEWER LINE ROUTE.

Deprivation of property without due process of law and fair compensation results where uncontradicted testimony shows encroachment on plaintiff's land by a portion of township sewer which was constructed without hearing to determine the propriety of the sewer line route.

11. DRAINS—SEWERS—DAMAGES.

Limited retrial of suit to enjoin construction of sewer insofar as sewer encroached on plaintiff's premises for purpose of determining damages is ordered, where no hearing had been held to determine propriety of route before construction (US Const, Am 14; Mich Const 1908, art 2, § 16, art 13, § 1).

12. Costs—Neither Party Prevailing in Full.

> No costs are allowed on appeal in suit involving construction
> of sewer in public highway and which also encroached on
> plaintiff's land, where neither party has prevailed in full.

Appeal from Ingham; Smith (Richard G.), J., presiding. Submitted Division 2 February 7, 1967, at Lansing. (Docket No. 358.) Decided November 27, 1967. Leave to appeal granted February 13, 1968. See 380 Mich 757.

Bill of complaint by Wilbur C. Gunn against Delhi Township to enjoin it from laying a sewer line. Trial court issued restraining order, then discontinued it, and defendant built sewer. Amended complaint by plaintiff for damages. Trial court ordered defendant to make sump holes operative and denied other relief. Plaintiff appeals. Reversed and remanded for determination of damages.

*Paul C. Younger,* for plaintiff.

*Parks, Church, Wyble & Barnes,* for defendant.

J. H. Gillis, J. This case involves a chancery suit commenced September 22, 1961. Plaintiff Wilbur C. Gunn was the owner of 245 acres of farm land located adjacent to the intersection of McCue and Onondaga roads approximately 2 miles from Lansing, Michigan. Plaintiff sought to enjoin defendant, Delhi Township, from laying a sewer pipe in McCue road (a county road), the fee title of which was in plaintiff, whose acreage abutted the road. The trial court issued a restraining order, then discontinued it, and defendant built the sewer. Plaintiff amended his original complaint contending the following occurred without his permission: (1) that a portion of the sewer was constructed in the

road, the fee title to which he owned; (2) that the sewer cut across a corner of his farm land, which was adjacent to the county road; (3) that the sewer as constructed interfered with the drainage of plaintiff's land. In the amended complaint plaintiff requested the court to order the defendant to condemn his property or to remove the sewer or to pay money damages. The Ingham county circuit court, on November 27, 1964, ordered defendant to make operative certain sump holes in the existing drainage system and denied all other requested relief. The appeal is taken from that decision.

Plaintiff's amended complaint alleged that he was harmed in a three-fold manner:

(1) The appropriation of the subsurface of McCue road for the sewer line was invalid as being in contravention of the Michigan Const 1908, art 2, § 16, and of art 13, §§ 1 and 2; and of the US Const, Am 14 (*i.e.*, essentially a taking of private property for public purposes without due process of law).

(2) The sewer obstructed the drainage system, thus depriving plaintiff of rights appurtenant to his land without due process and without having the necessity for this deprivation ascertained and his loss compensated, as required by Michigan Const 1908, art 13, §§ 1 and 2.

(3) The sewer encroached on a portion of plaintiff's land adjacent to the road.

These claims will be dealt with in order.

### OWNERSHIP RIGHTS IN McCUE ROAD.

Plaintiff asserts in his brief that McCue road is a prescriptive easement road, the easement being only for foot and vehicular traffic and the necessary adjuncts, which do not include a sewer line. Defendant claims the road has been impliedly dedi-

cated to the public through use by the public and maintenance by the public authorities for the period specified in CL 1948, § 221.20 (Stat Ann 1958 Rev § 9.21).[1]

Generically, a dedication is "an appropriation of land to some public use, accepted for such use by or in behalf of the public." *Clark* v. *City of Grand Rapids* (1952), 334 Mich 646, 656, 657. Two types of dedications have been specifically recognized in this State, statutory dedication and common-law dedication; the distinction was explicitly approved by the Supreme Court prior to the turn of the century. *Alton* v. *Meeuwenberg* (1896), 108 Mich 629. Statutory dedication may result from compliance with the plat act of 1929, CL 1948, §§ 560.1–560.80, as amended (Stat Ann 1953 Rev and Stat Ann 1965 Cum Supp §§ 26.431–26.511). The definition of common-law dedication was given in *Alton* v. *Meeuwenberg, supra,* at p 636, and has been incorporated without substantial change into CL 1948, § 221.20, *supra,* quoted in footnote 1.

The distinction must be stated because of the difference in result hinging on the type of dedication. The traditional position was stated in *Village of Grandville* v. *Jenison* (1890), 84 Mich 54, 65:

"The effect of a dedication under the statute has been to vest the fee in the county, in trust for the municipality intended to be benefited, whereas, at common law, the act of dedication created only an easement in the public."

[1] "All highways regularly established in pursuance of existing laws, all roads that shall have been used as such for 10 years or more, whether any record or other proof exists that they were ever established as highways or not, and all roads which have been or which may hereafter be laid out and not recorded, and which shall have been used 8 years or more, shall be deemed public highways, subject to be altered or discontinued according to the provisions of this act."

In *West Michigan Park Association* v. *Department of Conservation* (1966), 2 Mich App 254, this Court relied on CL 1948, § 560.50 (Stat Ann 1953 Rev § 26.480)[2] in ruling that a "base" or qualified fee was passed to the public by a proper statutory dedication.

The requisites of statutory dedication do not appear to have been met here.  The record indicates a conflict in testimony as to whether defendant township ever formally accepted the plat proposed and submitted by plaintiff.  When asked on direct examination what action the township had taken with regard to the plat, plaintiff testified "I understand it has been approved provided it is hooked to the sanitary sewer."  Plaintiff's witness, Floyd R. Decker, testified that the plat was never accepted or approved by the defendant township.

In addition, the certificate required by CL 1948, § 560.11 (Stat Ann 1953 Rev § 26.441)[3] does not appear on the proposed plat, (plaintiff's exhibit number 7), nor is there any indication given in the record that the required certification has been made elsewhere.  Further, there is no evidence that the plat was recorded in compliance with CLS 1961, § 560.3 (Stat Ann 1965 Cum Supp § 26.433).[4]  The failure of proof in these respects warrants the conclusion that the plat was not made and recorded in compliance with the statutory provisions and that,

---

[2] "The plat so made and recorded in compliance with the provisions of this act shall be deemed a sufficient conveyance to vest the fee of such parcels of land as may be herein designated for public use in the municipality within the limits of which the land platted is included, in trust to and for the uses and purposes therein designated and for no other use or purpose whatever."

[3] "The surveyor or engineer making a. plat shall certify that the plat is a correct one and that the monuments described in it have been planted as therein described."

[4] "Any proprietor who shall hereafter subdivide any lands shall make and record a plat thereof in accordance with the provisions of this act, and said plat shall be made, approved, filed, recorded, altered and vacated in the manner hereinafter provided."

therefore, there was no vesting of the fee in the municipality.

An unsuccessful attempt at statutory dedication does not preclude a common-law dedication. *City of Mt. Clemens* v. *Mt. Clemens Sanitarium Co.* (1901), 127 Mich 115. The evidence in this case was sufficient to support a finding of dedication under CL 1948, § 221.20, quoted in footnote 1. Although as noted above, a fee interest was not transmitted under a common-law dedication, some quasi-ownership rights did pass from the former owner. The problem of defining such rights from cases does not have to be met, since the statute spells out the rights in question here; CL 1948, § 247.183 (Stat Ann 1958 Rev § 9.263) provides:

"Telegraph, telephone, power and other public utility companies and *municipalities* are authorized to enter upon, construct and maintain telegraph, telephone or power lines, pipe lines, wires, cables, poles, conduits, *sewers* and like structures upon, over, across, or under *any public road.*" (Emphasis supplied.)

The stated authorization is clear and specific. No distinction is to be drawn between county roads and city roads, contrary to the urgings of plaintiff. The conclusion appears inevitable that in Michigan nonstatutory dedication of land for use as a public road or highway operates to transfer to public authorities and public utility companies the right to construct sewer lines thereunder, and thus there was no deprivation of property in the constitutional sense.

The broad phraseology of the second sentence of CL 1948, § 247.185 (Stat Ann 1958 Rev § 9.265)[5]

---

[5] "The construction and maintenance of all * * * sewers and like structures shall be subject to the paramount right of the public to use such public places, roads, bridges and waters, and shall not interfere with other public uses thereof and nothing herein contained

is relied upon by plaintiff as preserving his exist-
ing rights in McCue road in spite of CL 1948,
§ 247.183. Defendant asserts that it should be read
to refer only to "public rights", even though refer-
ence is made to "any rights" and "any existing
rights". The mandate of this sentence prohibits
a construction by which rights are "granted" to
public utilities or by which existing rights are "im-
paired"; the sentence does not specify whose exist-
ing rights are not to be impaired. The required
construction is that of a "regulation of the exercise
of all such rights". A statute which does not con-
fer or withdraw rights, but only "regulates" them,
seems to assume the pre-existence of such rights;
at least, this emerges as the only premise on which
a reasonable construction may be based.

CL 1948, § 247.183 is primarily a declaration that
specified public bodies have the right to engage in
certain described activities on public roads; the
right arises from the fact that the roads are "pub-
lic", not from the statute itself. The public char-
acter of a road is determined by dedication, even
if the dedication is nonstatutory (see footnote 1).
This section is regulatory as well as declaratory;
the regulation is that the rights declared therein
may be exercised only with the consent of the proper
public authorities. It is this proviso which con-
stitutes the regulation to which reference is made
in the disputed sentence of CL 1948, § 247.185
quoted in footnote 5.

---

shall be construed to authorize any  *  *  *  municipality to cut,
destroy, or in anywise injure any tree or shrub planted within any
highway right-of-way.  *  *  *  Nor shall anything in this or the
next 2 sections preceding be construed to grant any rights whatsoever
to any public utilities whatsoever, nor to impair anywise any exist-
ing rights granted in accordance with the Constitution or laws of
this State, but shall be construed as a regulation of the exercise of
all such rights."

Interference With the Drainage System.

Plaintiff argues that he has a vested right in proper maintenance of the drainage ditches and that he is entitled to compensation for the highest and best use to which the property could be put—in this case, as a residential subdivision. Without denying the validity of either position, we do not think that these two contentions are enough to establish plaintiff's case.

The rule of compensation for highest and best use is a standard for measuring damages. The question of damages is logically subsequent to the issue of infringement of a present right. That plaintiff's land might be suitable for purposes for which it is not now being used is immaterial to the proof of violation of a right. As regards the existence of a cause of action, the pertinent inquiry is whether plaintiff's use of his land as a farm was limited or infringed by defendant's sewer line. We must look to the relevant facts as they were before and after the installation of the sewer pipe.

There was a good deal of professional engineering testimony as to the drainage of the land. It appeared that a certain portion of the land could not be adequately drained even if the sewer were not there for the reason that there was not sufficient variation between the elevations of the area to be drained and the existing bottom of the drain. Plaintiff himself testified on cross-examination that water standing in the drains at that time was standing over the pipes; when asked if this indicated a different cause for the blockage, plaintiff admitted, "There are other things holding up the water at this time, yes." Later on, the following dialogue occurred between the trial court and plaintiff:

"*The Court.* Very well. Now, Mr. Gunn, does your land under its present use drain as well today as it did prior to the time that the sewer went in?

"*The Witness.* With the existing facilities it is draining the same as it was before the sewer.

"*The Court.* That's what I mean, the drain as set-forth in Exhibit 5 was in prior to the time that the sewer was put in, and do I understand that in so far as drainage is concerned, the land in its present use and present condition, drains the same today as it did back prior to the time of the sewer?

"*The Witness.* That is correct, as I did mention with one exception, and that is the eastern tile, eastern one of those two tiles which I didn't know whether it had been rehooked after the sewer went in there. If it has, there has been no change.

"*The Court.* There is no evidence that you see, pools of water on your land, or some other evidence which might—from which you might conclude the drainage is not as good today as it was prior to the time of the sewer?

"*The Witness.* I would say that is correct."

Gerald Graham, drain commissioner of Ingham county, testified that to the best of his knowledge all the existing tile connections had been "taken care of". He also stated that "the situation today is that due to natural causes and natural fill which is very much the same as it would be in the pipe if it weren't there * * * the water level is held up by natural deposits and I think that is why the water level is standing at or near the top of the pipe, due to natural causes." He added that the drain probably "needs another cleanout similar to what we had in 1948". Herbert Pointer, project administrator for the construction of the Delhi sewer, testified that special steps were taken to preserve all existing outlets from plaintiff's land to the Grovenburg drain.

In the opinion of the trial court there is a specific finding of fact that "the plaintiff has failed to prove by a preponderance of the evidence that under the present use of his land he has been damaged in any way." The standard for review of such findings in equity cases is that "We do not ordinarily disturb the findings of the trial judge in an equity case unless, after an examination of the entire record, we reach the conclusion we would have arrived at a different result had we been in the position of the trial judge." *Christine Building Company* v. *City of Troy* (1962), 367 Mich 508, 518. We have examined the record in this case. We cannot say that we would have arrived at a different conclusion.

### ENCROACHMENT.

There was uncontradicted testimony by plaintiff and by plaintiff's witness, William C. Berryman, that a portion of the sewer encroached on a corner of the northwest sector. Berryman, a registered engineer and county surveyor for Ingham county, prepared plaintiff's exhibit 6, which detailed the location of the encroachment, at the intersection of McCue road and Onondaga road.

No issue was made as to plaintiff's property rights in this part of the northwest acreage. Nor does the record reveal any hearing held with respect to passage of the sewer under this portion of plaintiff's land. Whatever authority the county drain commissioner had under CLS 1961, § 280.422 (Stat Ann 1960 Rev § 11.1422) to consent to construction of the sewer in the cross-section of an established county drain cannot extend to consenting to encroachment on plaintiff's land. "Due process of law requires notice and opportunity to be heard." *Dation* v. *Ford Motor Company* (1946), 314 Mich

152, 167. Prior to the action taken by defendant township, no hearing was held to determine the propriety of the route of the proposed sewer line.

"The right to full and free use and enjoyment of one's property * * * is one of which he may not be deprived by government without due process of law nor may his property be taken by government without just compensation." *Roman Catholic Archbishop of Detroit* v. *Village of Orchard Lake* (1952), 333 Mich 389, 392.

We hold that under these circumstances, plaintiff, as to the corner of the northwest quadrant, was deprived of his property without due process and without fair compensation in violation of Mich Const 1908, art 2, § 16, and art 13, § 1; Mich Const 1963, art 1, § 17, and art 10, § 2; and US Const, Am 14.

Reversed and remanded for a retrial limited to the establishment of damages for the encroachment of the sewer on plaintiff's property. No costs, neither party having prevailed in full.

HOLBROOK, P. J., and FITZGERALD, J., concurred.