EYDE BROTHERS DEVELOPMENT COMPANY v EATON
COUNTY DRAIN COMMISSIONER

Docket No. 77724. Submitted August 14, 1984, at Lansing.—Decided
August 22, 1985. Leave to appeal granted, 422 Mich —.

Eyde Brothers Development Company owns five parcels of property located on either side of Mt. Hope Highway in Delta
Charter Township in Eaton County. Mt. Hope Highway is a
public road by prescriptive use and is statutorily deemed a
public highway. Blue Cross and Blue Shield of Michigan (BCBS)
built a health facility in Delta Township and agreed with the
township to construct a sanitary sewer under or along Mt.
Hope Highway to service the center with the sewer then
becoming the property of the township. The township authorized construction of the sewer. In addition, the Eaton County
Drain Commissioner entered into an agreement whereby BCBS
would construct a storm sewer system along or under Mt. Hope
Highway. On completion, the storm sewer system would become part of Eaton County's drain system. The drain commissioner's statutory duty to obtain an easement or release of
right-of-way from the subsurface owner was delegated to BCBS.
After Delta Township and Eaton County authorized the construction of the sewer systems and issued the necessary permits
and agreements for the project, Eyde Brothers filed two suits in
Eaton Circuit Court, one against the Eaton County Road Commission and the Eaton County Board of Road Commissioners,
seeking declaratory and injunctive relief, and the other against

REFERENCES FOR POINTS IN HEADNOTES

[1] Am Jur 2d, Highways, Streets, and Bridges §§ 25-31.
Use of property by public as affecting acquisition of title by adverse
possession. 56 ALR3d 1182.

[2] Am Jur 2d, Easements and Licenses § 24.
Extent of, and permissible variations in, prescriptive easements of
way. 5 ALR3d 439.

[3] Am Jur 2d, Easements and Licenses § 7.
Extent of, and permissible variations in, prescriptive easements of
way. 5 ALR3d 439.

[4] Am Jur 2d, Eminent Domain § 178.
See the annotations in the ALR3d/4th Quick Index under Highways and Streets.

the Eaton County Drain Commissioner, Eaton County, and the Eaton County Board of Commissioners, seeking a writ of mandamus requiring the drain commissioner to fulfill her statutory duty to obtain a release of plaintiff's rights in the Mt. Hope Highway property. The trial court, Harvey W. Moes, J., granted summary judgment in favor of the drain commissioner, finding that plaintiff had failed to state a claim for mandamus. The court also ordered an evidentiary hearing on plaintiff's action for declaratory and injunctive relief. Following that hearing, the court held that Mt. Hope Highway was a public highway within the exclusive control and jurisdiction of the Eaton County Road Commission, that the highway was 66 feet wide, with the exception of a strip located directly in front of plaintiff's rental residence, where the court found the road to be 47-1/2 feet wide. The court then issued a final injunctive order protecting the front lawn areas of the rental residence but otherwise dismissed plaintiff's complaint as to any other claim of title or right in Mt. Hope Highway. Plaintiff appealed by leave granted from the grant of summary judgment in favor of the drain commissioner and appealed as of right from the order dismissing plaintiff's complaint as to its claim of title or right in Mt. Hope Highway. Intervening defendant BCBS cross appealed the court's order protecting the lawn areas of plaintiff's rental residences. The Court of Appeals reinstated a temporary restraining order preventing the commencement of construction of the sewers. *Held:*

1. Defendant's proposed sewers are not within the scope of the Mt. Hope Highway easement because the sewers would not benefit the highway use or the public's right to travel, since there is no showing that the highway has any need of additional drainage by storm sewer or otherwise.

2. The general highway law does not give defendants any statutory right to construct the sewers. The public has acquired rights to the highway by prescription, but plaintiff still retains title to the soil under the highway.

3. The Drain Code of 1956 does not give defendants statutory authority to construct the sewers. Where the public has acquired a highway easement by prescriptive use, the abutting land owner owns the fee to the soil under the highway and the drain commissioner is required to obtain a release of the right-of-way, presumably by purchase or condemnation, before sewers can be constructed under the road.

4. The orders issued by the trial court are reversed and the case is remanded to the circuit court for (1) the issuance of a writ of mandamus against the drain commissioner requiring

her not to allow the sewer construction to proceed unless and until she obtains the statutorily required releases from plaintiff, or defendants otherwise obtain title to the property or a right-of-way for the laying of the sewers and (2) the issuance of a permanent injunction against all defendants prohibiting them from proceeding with the sewer project or otherwise interfering with plaintiff's property rights in conjunction therewith unless and until the same conditions are satisfied.

The trial court's temporary restraining order shall continue until further order of the circuit court.

Reversed and remanded.

1. HIGHWAYS — HIGHWAYS BY USER — EVIDENCE.

The public may acquire title to a highway by prescription where no formal dedication has ever been made; the acquisition of such a "highway by user" requires that the road be used and worked upon by public authorities for ten consecutive years without interruption and that the public's possession is open, notorious, and exclusive; where the elements of a "highway by user" are established, a rebuttable presumption arises that the highway is four rods, or 66 feet, wide (MCL 221.20; MSA 9.21).

2. HIGHWAYS — EASEMENTS — COMMON LAW.

A highway easement, under the common law, gives the public a right-of-way for travel; the abutting land owner owns the fee to the middle of the highway, subject only to the easement in the public to use the same for highway or street purposes.

3. HIGHWAYS — EASEMENTS.

A highway easement generally includes the right to use the subsurface to facilitate travel, such as maintenance and improvement of the highway itself; sewers, ditches, or underground installations fall within the easement if essential to make the highway easement effective.

4. DRAINS — RIGHT-OF-WAYS — CONDEMNATION — CONSTITUTIONAL LAW.

To allow a governmental agency to make use of property, to which it has neither title in fee simple nor an appropriate right-of-way, for the laying of a sewer line without purchasing the necessary right-of-way or condemning the property would be to authorize a taking of private property without just compensation (US Const, Ams V, XIV; Const 1963, art 10, § 2).

*Reid, Reid, Perry, Lasky & Hollander, P.C.* (by *Joseph D. Reid* and *John R. Fifarek),* for plaintiff.

*W. J. Drillock,* for Eaton County Drain Commissioner.

*Paul F. Berger,* Prosecuting Attorney, and *C. Sherman Mowbray,* Assistant Prosecuting Attorney, for Eaton County and the Eaton County Board of Commissioners.

*Foster, Swift, Collins & Coey, P.C.* (by *Theodore W. Swift, William K. Fahey* and *Stephen O. Schultz),* and *Steven C. Hess,* for Blue Cross and Blue Shield of Michigan.

. Before: CYNAR, P.J., and WAHLS and S. T. FINCH,* JJ.

S. T. FINCH, J. The instant appeal involves two separate actions which were consolidated in the circuit court. Plaintiff Eyde Brothers Development Company appeals by leave granted from a circuit court order granting summary judgment, GCR 1963, 117.2(1), in favor of defendant Eaton County Drain Commissioner. The circuit court held that plaintiff had failed to state a claim for a writ of mandamus. Plaintiff also appeals as of right from the circuit court's order modifying a previously issued temporary restraining order and issuing a permanent injunction. Intervenor Blue Cross and Blue Shield of Michigan (BCBS) cross appeals from the circuit court's order issuing the permanent injunction.

Plaintiff Eyde Brothers Development Company owns five separate parcels of property located in the Charter Township of Delta in Eaton County. These parcels of property are located on either side of Mt. Hope Highway and their legal description includes the property on which the highway is

---

* Circuit judge, sitting on the Court of Appeals by assignment.

located, up to the center line of the highway. Plaintiff claims a property interest in all property up to the paved surface of Mt. Hope Highway and all property under the highway. The parties agree that Mt. Hope Highway, a section line road, is a public road by prescriptive use and is statutorily deemed a public highway. MCL 221.20; MSA 9.21. The Eaton County Road Commission has jurisdiction over the maintenance of the highway.

The dispute in the present case concerns BCBS's right to construct a sanitary sewer and a storm sewer pursuant to utility agreements with defendants Charter Township of Delta and Eaton County. The proposed sewers would be constructed along the center line of Mt. Hope Highway and in the subsurface of the paved portion of the highway.

In 1983, BCBS constructed a multi-million dollar health facility. The Charter Township of Delta entered into a utility agreement with BCBS whereby BCBS would construct a sanitary sewer under or along Mt. Hope Highway. The sewer would service the BCBS health center and become the property of the township. In 1984, the township authorized construction of the sanitary sewer. Additionally, the Eaton County Drain Commissioner entered into an agreement with BCBS for the construction of a storm sewer. The agreement granted BCBS the authority to install a storm sewer system along or under Mt. Hope Highway. On completion, the system would become part of the Eaton County Drain System. The agreement recognized the drain commissioner's statutory duty to obtain an easement or release of right-of-way from the subsurface owner, see MCL 280.321; MSA 11.1321 and MCL 235.1; MSA 9.431, and delegated this duty to BCBS.

In March and April of 1984, the Eaton County

Drain Commissioner authorized construction of the storm sewer and Delta Township authorized construction of the sanitary sewer within a 2,400-foot length of Mt. Hope Highway. After Delta Township and the drain commissioner issued the necessary permits and agreements to construct the sewers, plaintiff commenced two lawsuits in Eaton County Circuit Court. In the first, plaintiff brought suit against the Eaton County Road Commission, and the Eaton County Board of Road Commissioners seeking declaratory and injunctive relief. This suit involved the use of Mt. Hope Highway for the construction of the sanitary sewer. Plaintiff sought a declaration of its rights in the Mt. Hope Highway property and an injunction preventing the road commission from interfering with plaintiff's property absent compliance with MCL 213.21 *et seq.;* MSA 8.11 *et seq.* (condemnation of private property).

The second action involved the construction of the storm sewer. Plaintiff brought suit against the Eaton County Drain Commissioner, Eaton County, and the Eaton County Board of Commissioners seeking a writ of mandamus requiring the drain commissioner to fulfill her statutory duty to obtain a release of plaintiff's rights in the Mt. Hope Highway property pursuant to MCL 280.321; MSA 11.1321 and MCL 235.1; MSA 9.431.

On March 28, 1984, plaintiff obtained a temporary restraining order preventing the commencement of construction of the sewers. On April 6, 1984, the trial court granted the drain commissioner's motion for summary judgment, GCR 1963, 117.2(1). The trial court found that plaintiff had failed to state a claim for mandamus based on *Gunn v Delhi Twp,* 8 Mich App 278; 154 NW2d 598 (1967).

The trial court ordered an evidentiary hearing

on plaintiff's action for declaratory and injunctive relief. The court directed the parties to file supplemental briefs and appear at an expedited trial on April 11, 1984, to resolve the question of the width of the Mt. Hope Highway and that portion which could be used for the installation of public sewers under MCL 221.20; MSA 9.21. On April 12, 1984, the trial court held that Mt. Hope Highway was a public highway within the exclusive control and jurisdiction of the Eaton County Road Commission. The court found that the highway was 66 feet wide (33 feet on either side from the center line), with the exception of two parcels located directly in front of plaintiff's rental residence, where the testimony showed that the lawn had been mowed. At those points, the circuit court held that the highway was a total of 47-1/2 feet wide. On April 12, 1984, the court issued a final injunctive order protecting the two front lawn areas of plaintiff's rental dwellings, but otherwise dismissed plaintiff's complaint as to any other claim of title or right in Mt. Hope Highway. The court ordered that the previously issued temporary restraining orders be dissolved.

Plaintiff appealed by leave granted from the April 6, 1984, order of the trial court granting summary judgment in favor of the drain commissioner and appealed as of right from the April 12, 1984, order of the trial court. Intervening defendant BCBS cross-appealed the April 12, 1984, order. This Court reinstated the temporary restraining order and granted plaintiff's application for leave from the April 6, 1984, order.

I

Initially, BCBS argues that, by failing to address the issue of the lawfulness of the proposed sani-

tary sewer construction, plaintiff has abandoned that issue. Defendant suggests that, at a minimum, this Court must lift that portion of the injunction which prevents defendants from constructing sanitary sewers. We disagree. Plaintiff's action for a writ of mandamus against the drain commissioner and plaintiff's action against the Road Commission were consolidated below. The issue raised by plaintiff is whether defendants may construct any sewer system, storm or sanitary, without instituting condemnation proceedings, MCL 213.21 *et seq.;* MSA 8.11 *et seq.,* or providing plaintiff with just compensation, as provided by the federal and state constitutions. Const 1963, art 10, § 2; US Const, Am V and Am XIV. Plaintiff also argues that if Eaton County does not have title in fee simple to the highway, the drain commissioner must obtain a release of the right-of-way, either by purchase or condemnation. MCL 280.321; MSA 11.1321, MCL 235.1; MSA 9.431.

II

Defendants argue that they have the right to construct sewers under Mt. Hope Highway because the public has acquired title to the highway by prescription or "highway by user". Under this doctrine, the public acquires title to a road where the road is used and worked on by public authorities for ten consecutive years without interruption and the public's possession is open, notorious, and exclusive. *Rigoni v Michigan Power Co,* 131 Mich App 336, 343-344; 345 NW2d 918 (1984). If these elements are established, MCL 221.20; MSA 9.21 operates to raise a rebuttable presumption that the road is four rods wide, or 66 feet. *Eager v State Hwy Comm'r,* 376 Mich 148, 151-152, 154; 136 NW2d 16 (1965); *Rigoni, supra,* p 344.

However, neither MCL 221.20; MSA 9.21 nor the cases interpreting it define the scope of a highway easement which is established by prescription or user. Defendants do not want to use the highway itself. Rather, they seek to install sewers under the highway. The question is whether such a subsurface use falls within the scope of a highway easement.

The common law rule is that a highway easement gives the public a right-of-way for travel. The abutting land owner, however, owns the fee to the middle of the highway, subject only to the easement in the public to use the same for highway or street purposes. *Hall v Wantz*, 336 Mich 112, 117; 57 NW2d 462 (1953); *People, ex rel Director of Dep't of Conservation v LaDuc*, 329 Mich 716, 719-720; 46 NW2d 442 (1951); *Loud v Brooks*, 241 Mich 452, 456; 217 NW 34 (1928). See generally 39 Am Jur 2d, Highways, Streets, and Bridges, §§ 163-164, pp 538-541.

In *LaDuc, supra,* the defendants contended they had a right to operate a boat livery on state land because the location where the business was carried out was at the end of a public highway. The circuit court held that the defendants and the general public had the right to use the public highway. The Supreme Court stated the general rule that:

" 'By the common law, the fee in the soil remains in the original owner, where a public road is established over it; but the use of the road is in the public. The owner parts with this use only.' *Barclay v Howell's Lessee*, 6 Pet (31 US) 498, 513 (8 L ed 477)." 329 Mich 719.

The Supreme Court concluded that the plaintiff, as abutting owner on both sides of the highway, was

owner in fee of the soil over which the highway was established and was entitled to injunctive relief restraining defendants' activities. This holding was predicated on the Court's finding that defendants were not merely making use of the highway as the public in general was entitled to, but rather were using it to carry on a private enterprise. *LaDuc, supra,* p 720. Here, the sewers which defendants seek to install may not be solely to the benefit of the BCBS health center, inasmuch as they will revert to public ownership in the Eaton County Drain Commission after construction. This will save the expense of such construction to the public, in the event such sewers ever become necessary for anyone's use other than BCBS. *When* such other use might become necessary is not a part of the record.

Generally, a highway easement includes the right to use the subsurface to facilitate travel, such as maintenance and improvement of the highway itself. Sewers, ditches, or underground installations fall within the easement if essential to make the highway easement effective. 39A CJS, Highways, § 139, pp 863-865. In *Minot Sand & Gravel Co v Hjelle,* 231 NW2d 716 (ND, 1975), for example, it was held that the state could only use the commercially valuable aggregate underlying a highway for lateral and subjacent support or for construction and repair. Any other use would be beyond the scope of the easement and the owner would be entitled to just compensation. 231 NW2d 724. Other jurisdictions have broadened the scope of a highway easement, many by statute, to include use for any public purpose. Under this analysis, an underground installation, which is to benefit the public at large and does not impair the use of the highway, falls within the highway easement. See *Hale County v Davis,* 572 SW2d 63 (Tex

Civ App, 1978); *Chicago Title & Trust Co v Village of Burr Ridge,* 41 Ill App 3d 112; 354 NE2d 61 (1976).

We cannot conclude, however, that the scope of a highway easement should be interpreted so broadly. The abutting owner owns the fee to the middle of the highway and has the right to use the subsurface for any purpose not detrimental to the highway easement. We believe that, under the common law, a highway easement is limited to the right to travel. That is, a subsurface use falls within a highway easement only when essential to make the highway easement effective. Consequently, defendants' proposed sewers are not within the scope of the Mt. Hope Highway easement unless they are, in fact, beneficial to the highway itself or the public's right to travel. Once a subsurface use falls within the highway easement, MCL 221.20; MSA 9.21 then defines the width of the easement. Since defendants' appellate counsel have maintained in this Court that the proposed sewers are to be constructed in the middle of the highway, it is unnecessary to discuss the parties' arguments concerning the width of the easement under MCL 221.20; MSA 9.21. A reasonable interpretation of the record indicates that construction of the sewers in question will not benefit the highway use or the public's right to travel, since there is no showing that the highway has any need of additional drainage by storm sewer or otherwise.

### III

Defendants, however, claim that the general highway law, MCL 220.1 *et seq.;* MSA 9.1 *et seq.,* gives them the statutory right to construct the sewers. We disagree. Defendants rely on MCL 247.183; MSA 9.263, which provides:

"Sec. 13. Telegraph, telephone, power, and other *public utility companies,* and cable television companies and *municipalities* are authorized to enter upon, construct and maintain telegraph, telephone or power lines, pipe lines, wires, cables, poles, conduits, *sewers* and like structures upon, over, across, or *under any public road,* bridge, street or public place and across or under any of the waters in this state, with all necessary erections and fixtures therefor. Every such telegraph, telephone, power, and other public utility company, cable television company and municipality, before any of the work of such construction and erection shall be commenced, shall first obtain the consent of the duly constituted authorities of the city, village, or township through or along which said lines and poles are to be constructed and erected." (Emphasis added.)

Defendants in this case contend they are either a public utility company or a municipality. However, MCL 247.185; MSA 9.265 provides in part:

"Nor shall anything in this section or sections 13 [MCL 247.183; MSA 9.263] and 14 be construed to grant any rights whatsoever to any public utilities or cable television companies whatsoever, nor to impair anywise any existing rights granted in accordance with the constitution or laws of this state, but shall be construed as a regulation of the exercise of all such rights."

In the present case, the public has acquired rights to the highway by prescription. Under this doctrine, plaintiff still retains title to the soil under the highway. *LaDuc, supra.* Thus, we cannot conclude that in a case such as this, where the highway is established by prescription or user, that the Legislature intended to give the public rights greater than plaintiff's common-law property rights and constitutional rights not to be deprived of property without due process of law.

Defendants also rely on *Gunn, supra,* where a panel of this Court held that when the public has

acquired title to a public road by common-law dedication, a public utility company or municipality may construct a sewer line under the public road. *Gunn* is distinguishable from the present case because BCBS is a private corporation and not a public utility or municipality constructing a sewer for the public benefit.[1] However, to the extent that *Gunn* may be interpreted as construing MCL 221.20; MSA 9.21 as divesting the abutting owner of its subsurface property rights, we decline to follow it. *Cf. Eager v State Hwy Comm'r, supra,* pp 154-155.

IV

Defendants also rely on the Drain Code of 1956, MCL 280.1 *et seq.;* MSA 11.1001 *et seq.,* for the statutory authority to construct the sewers. The Drain Code defines "drain" as including sanitary and storm sewers, MCL 280.3; MSA 11.1003, and provides that:

"Drains may be laid within or across the right of way of any highway, provided it shall be necessary for the county drain commissioner to obtain first a permit from the highway authority having jurisdiction. If title in fee simple be not in the highway authority, said commissioner shall also obtain a release of right of way for the purposes of such drain from the owner of the land, as provided in sections 73, 74 and 75 of this act." MCL 280.321; MSA 11.1321.

---

[1] Defendants apparently assume that the road commission's and drain commissioner's duties have been properly delegated to BCBS, and it therefore has somehow become a municipality. Defendants cite no authority for such proposition and we question the ability of a municipality to delegate the decision to construct a sewer to a private corporation. However, even if such delegation is proper, BCBS's authority could not exceed that of the road commission or drain commissioner, *Cuming v Prang,* 24 Mich 514 (1872), and in any case, the construction remains a private undertaking and not the work of the municipality for benefit of the general public.

Plaintiff argues that since the highway authority (Eaton County) does not have title in fee simple, the drain commissioner must obtain a release of the right-of-way, presumably by purchase or condemnation. Section 74, however, provides in part:

"Whenever a portion of a drain shall be located within any street, highway or public place, then a resolution adopted by a majority vote of the governing body having jurisdiction over such street, highway, or public place granting leave to construct such drain therein, designating the place to be traversed by said drain, shall be a sufficient release of the right of way, and shall be deemed a sufficient conveyance under this act, and said governing body may permit the construction of an open drain if such consent be set forth in such resolution." MCL 280.74; MSA 11.1074.

Defendants argue that, since a resolution from the county road commission exercising control over a highway is deemed a sufficient conveyance, the Legislature has provided that the ownership and control of public roads is vested in public agencies. We disagree with this interpretation as applied to this fact situation where the public has acquired a highway easement by prescriptive use.

MCL 280.321; MSA 11.1321 recognizes that drains may not be installed upon private property without securing a right-of-way from the property owner. If the highway authority holds title in fee simple or a right-of-way which includes the laying of utility lines, then the appropriate governmental authority could proceed. However, to construe MCL 280.74; MSA 11.1074 to allow a governmental agency to make use of property, to which it has neither title in fee simple nor an appropriate right-of-way, for the laying of a sewer line without purchasing the necessary right-of-way or condemning the property, would be to authorize a taking of

private property without just compensation in violation of Const 1963, art 10, § 2, and US Const, Am V and Am XIV. Well-recognized rules of statutory construction prevent us from interpreting legislation to allow a taking of private property without just compensation in violation of § 2 of article 10 of our constitution. *Pigorsh v Fahner,* 386 Mich 508, 514; 194 NW2d 343 (1972). Consequently, we conclude that the above-cited portion of MCL 280.74; MSA 11.1074 was not intended to apply to a highway acquired by prescription or user.

We also agree with plaintiff that under MCL 280.321; MSA 11.1321 the drain commissioner is required to obtain a release of right-of-way before the sewers may be installed. We do not agree with defendants' argument that abutting landowners may not claim any property interest in land within or under a public road (see section II, *supra)* and that, therefore, the Drain Code may be interpreted as *only* requiring the drain commissioner to obtain a release for the construction of drainage ditches *outside* the pavement and shoulders of a highway.

## V

We conclude that neither the general highway law nor the Drain Code of 1956 authorizes defendants to construct the sewers without first obtaining releases from plaintiff. The proposed sewers are not within the scope of the Mt. Hope Highway easement. The circuit court orders of April 8 and April 12, 1984, are reversed. This case is remanded to the circuit court for:

(1) the issuance of a writ of mandamus against the Drain Commissioner requiring her not to allow the sewer construction to proceed unless and until she obtains the statutorily required releases from

plaintiff, or defendants otherwise obtain title to the property or a right-of-way for the laying of the sewers, and

(2) the issuance of a permanent injunction against all defendants prohibiting them from proceeding with the sewer project or otherwise interfering with plaintiff's property rights in conjunction therewith unless and until the same conditions are satisfied.

The trial court's temporary restraining order shall continue until further order of the circuit court. We retain no jurisdiction.

Reversed and remanded.