MINERVA PARTNERS, LTD v FIRST PASSAGE, LLC

Docket No. 270778. Submitted January 10, 2007, at Lansing. Decided February 6, 2007, at 9:05 a.m.

Lear Corporation EEDS and Interiors brought an action in the Grand Traverse Circuit Court against First Passage, LLC; and others, seeking to quiet title to a portion of an abandoned road. The property involved had been the subject of a complicated chain of conveyances and inheritances, with Lear and First Passage eventually owning property on either side of the road. At issue was the ownership of the portion of the abandoned road used by First Passage as an access route to its property. This access route did not span the full width of the road, but included property located on both sides of the road's centerline. After Lear sold its property to Minerva Partners, Ltd., the court, Thomas G. Power, J., substituted Minerva as the plaintiff. Following cross-motions for summary disposition, the court concluded that, when the county road commission abandoned the road, title to the property to the centerline of the road automatically reverted to the abutting landowners. Thus, the court determined that each party held title to the portion of the abandoned road adjoining that party's property. Consequently, the portion of First Passage's access route on Minerva's side of the centerline was Minerva's property. The court also determined that neither party retained private ingress and egress rights in the form of a private easement across the portion of the road on the other party's side of the centerline. First Passage appealed the order quieting title to the centerline, and Minerva cross-appealed the order denying private easements.

The Court of Appeals *held*:

1. The trial court erred when it quieted title. The road was created either through common-law dedication or the highway-by-user doctrine. Thus, the property was subject to an easement. When the board of county road commissioners abandoned the road, the owners of the land under the road retained title to that property free of the public easement. While the general rule is that the conveyance of land bounded by a road generally conveys the fee to the center of the road, the plain language of an unambiguous deed controls. From the plain terms of the deeds in the parties'

chains of title, it is clear that Minerva holds title to the land under the road except for the access route, which First Passage owns in fee simple.

2. The trial court did not err by holding that neither party has easement rights of ingress and egress to its property over the property of the other party. When an unplatted road is abandoned and the public's right to use the road is relinquished, an adjoining landowner may only use the abandoned road if it has an independent easement right or other property interest in the land under the road. Minerva failed to establish that it had an easement in any portion of the road.

Affirmed in part, reversed in part, and remanded for further proceedings.

1. HIGHWAYS — EASEMENTS — ABANDONMENT OF PUBLIC EASEMENTS — ADJOINING LANDOWNERS.

A road created by common-law dedication or the highway-by-user doctrine creates an easement in the property for public use; when the road is abandoned, and the easement is thus extinguished, the fee of the abutting owners becomes free of the burden of the easement.

2. DEEDS — PROPERTY BOUNDED BY ROAD.

The general rule is that a conveyance of land bounded by a highway, street, or alley grants the fee to the center of the highway, street, or alley if the grantor owned to the center at the time of the conveyance; however, plain, unambiguous language to the contrary in a deed controls.

3. EASEMENTS — PRIVATE WAYS — HIGHWAYS — ABANDONMENT.

A landowner adjoining an unplatted abandoned road may use the abandoned road after it is abandoned, and the public right to use the road is relinquished, only if the landowner has an independent easement right or other property interest in the land under the road.

*Sondee Racine & Doren, PLC* (by *W. Peter Doren*), for Minerva Partners, Ltd.

*Garan Lucow Miller, P.C.* (by *Robert D. Goldstein* and *Peter B. Worden, Jr.*), for First Passage, LLC.

Before: MURRAY, P.J., and FITZGERALD and OWENS, JJ.

PER CURIAM. In this appeal, the parties dispute the ownership of an abandoned portion of Keystone Road in Garfield Township, Grand Traverse County. Defendant First Passage, LLC, appeals by right the order of the Grand Traverse Circuit Court denying its motion for summary disposition, in which order the trial court also quieted title to the disputed property by dividing it along the centerline of the abandoned road and holding that each party held title to the portion of Keystone Road adjoining that party's property. Plaintiff Minerva Partners, Ltd., cross-appeals the trial court's order denying each party a private easement for ingress or egress across the disputed property owned by the other party. We reverse the trial court's order quieting title to the disputed property, but we affirm the trial court's holding that neither party retains easement rights over the portion of the disputed property held by the other party.

Keystone Road, a road oriented in a southwest to northeast direction, became a public road between 1895 and 1908. Although it is unclear what method was used to dedicate the land as a road, the parties stipulate that the road was not created by plat or other formal dedication pursuant to statute, but was created either through common-law dedication or the highway-by-user doctrine. In 1997, the Grand Traverse County Road Commission abandoned the portion of Keystone Road in dispute in this case.[1]

In 1935, Ilo E. Tannewitz received title to land, including the property now belonging to plaintiff and defendant, from her husband. With this transfer, Tannewitz owned land on both sides of the road. Further,

---

[1] In this opinion, we refer to the abandoned portion of Keystone Road in dispute in this case as "the road."

the property transferred to Tannewitz, as described in the February 1935 deed, included the property under the road.

In November 1956, Tannewitz deeded a parcel of property south and east of the road to the Cherryland Humane Society. This parcel's northwest boundary was the southeast right-of-way of Keystone Road; the description of the property in the deed did not include the land under the road.[2] Tannewitz transferred two additional parcels of land to Cherryland in September 1959 and May 1967. The property included in the metes-and-bounds descriptions of these parcels did not include any land under Keystone Road.

In April 1958, Tannewitz transferred several parcels of land to the Traverse City Industrial Fund, Inc.,[3] including the land now belonging to plaintiff north and west of the road. In this deed, this parcel was described as follows: "The Southeast quarter of the Southwest quarter, except: . . . that part South and Easterly of [the road]."

In September 1981, the Industrial Fund transferred title to the parcel bordering the road (and now belonging to plaintiff) to Essex Group, Inc. In February 1988, Essex transferred title of this parcel to United Technological Automotive, Inc. (UTA). The metes-and-bounds

---

[2] Tannewitz originally transferred this property to Cherryland subject to a right of reverter. In May 1967, she again transferred the property to Cherryland, free of the right of reverter. The November 1956 and May 1967 deeds identify the northwest boundary of the property as the southeast right-of-way of Barlow Road. Apparently, "Barlow Road" is another name for Keystone Road. Defendant does not dispute that Cherryland, its predecessor in interest, did not receive title to the land under the road in either the November 1956 or the May 1967 deeds.

[3] The Traverse City Industrial Fund is now known as the Traverse City Area Industrial Fund. We refer to this entity as "the Industrial Fund" in this opinion.

descriptions of the property in these deeds indicated that the property was bounded by the northwest right-of-way line of the road. Accordingly, these deeds did not transfer title to land under the road to the purchasers of the property.

Tannewitz died on January 5, 1982. In her will, she left the remainder of her property, including her residual rights to the property under and surrounding the road, to her niece, Ruth Anna Raub Eaton. Ruth Anna died intestate in February 2000. Her sons John, Sherman, and Frank Eaton inherited her property. Accordingly, any residual rights to property under the road vested in them.

After the road commission abandoned the road in February 1997, Cherryland continued to use an approximately 140-foot long portion of the former road abutting LaFranier Road to access its property.[4] Although this access route did not span the width of the road, it included property located on both sides of the centerline. In October 2004, Cherryland purchased any remaining property interest that John and Sherman Eaton had in the access route. Cherryland transferred title to the property it owned south and east of the road, plus title to its interest in the access route, to defendant on November 5, 2004.[5]

On November 22, 2004, defendant purchased any remaining property interest that the Industrial Fund had in the access route. Defendant received any prop-

---

[4] In this opinion, we refer to the portion of the road adjoining LaFranier Road and used to access Cherryland's (now First Passage's) property as "the access route."

[5] In this deed, Cherryland also transferred title to adjoining property located in the road southwest of the access route and spanning the distance between the centerline and the southeast right-of-way line of the road. The parties provide no evidence indicating that Cherryland ever held title to this property.

erty interest that Frank Eaton, his heirs, and his assigns had in the access route through a judgment quieting title issued in March 2005.[6]

Although the information included in the lower court record does not establish a clear chain of title after UTA obtained ownership of the parcel north and west of the road, the parties do not dispute that Lear Corporation owned this property by 2004. On March 10, 2005, Lear filed a complaint to quiet title to the property located in the road. Specifically, Lear claimed ownership of the portion of the access route located northwest of the centerline.

On March 29, 2005, the Industrial Fund transferred to Lear its interest in property located in the road, but not the access route. The deed specified that the property constituting the access route had not been transferred to Lear because the Industrial Fund had already transferred its interest in this property to defendant. Lear subsequently sold the property north and west of the road and any interest it had in the land within the road to Minerva Partners, Ltd. The trial court substituted Minerva Partners for Lear as plaintiff in this action in December 2005.

In March 2006, defendant moved for summary disposition, arguing that it held fee title to the portion of the access route located north and west of the centerline of the road. Plaintiff filed a cross-motion for summary disposition, asserting that under Michigan law, after the abandonment of a public road, the remaining parcel of land reverts to the abutting property owners to the centerline of the former roadway, regardless of the

---

[6] Defendant failed to locate Frank Eaton when attempting to purchase the interests that other parties might have in the access route, necessitating legal action to quiet title with regard to Frank's interest in the property.

existence of a deed to the contrary. Moreover, plaintiff argued, the owner of land abutting a public road has a private easement across that road even after its abandonment.

After two hearings regarding the matter, the trial court concluded that when the road was abandoned, title to the property to the centerline automatically reverted to the abutting landowners. However, the trial court also concluded that neither party retained private ingress and egress rights over the portion of the road on the other party's side of the centerline.

I

Defendant argues on appeal that the trial court erroneously concluded that, after the road commission abandoned the road, ownership of the half of the road abutting each party's property reverted to that landowner. We agree. We review de novo both a trial court's ruling on a motion for summary disposition and its decision in an action to quiet title. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999); *Burkhardt v Bailey*, 260 Mich App 636, 646; 680 NW2d 453 (2004). We review the entire trial court record to determine if the trial court's order granting summary disposition was in error. *Maiden, supra* at 118.

Generally, a dedication is " 'an appropriation of land to some public use, accepted for such use by or in behalf of the public.' " *Gunn v Delhi Twp*, 8 Mich App 278, 282; 154 NW2d 598 (1967), quoting *Clark v Grand Rapids*, 334 Mich 646, 656-657; 55 NW2d 137 (1952). The dedication of private property can occur either pursuant to statute or under common-law principles. *Gunn, supra* at 282. This Court has noted that, "[f]or a road to become public property, there generally must be either a statutory dedication and an acceptance on

behalf of the public, a common-law dedication and acceptance, or a finding of highway by public user." *Beulah Hoagland Appleton Qualified Personal Residence Trust v Emmet Co Rd Comm*, 236 Mich App 546, 554; 600 NW2d 698 (1999).

Although a variety of acceptable methods exist to dedicate a parcel of land as a public highway, not all dedications of land result in a similar interest being passed to the public authority. The nature of the real property interest passing from the grantor to the government unit depends on the method of dedication. *Kalkaska v Shell Oil Co (After Remand)*, 433 Mich 348, 354 n 11; 446 NW2d 91 (1989). " 'The effect of a dedication under the statute has been to vest the fee in the county, in trust for the municipality intended to be benefited, whereas, at common law, the act of dedication created only an easement in the public.' " *Id.*, quoting *Village of Grandville v Jenison*, 84 Mich 54, 65; 47 NW 600 (1890). Similarly, the highway-by-user statute creates an easement for public use in private property. See *Eyde Bros Dev Co v Eaton Co Drain Comm'r*, 427 Mich 271, 281-282; 398 NW2d 297 (1986).

An easement cannot be abridged or taken away by the owner of the burdened land after it has been granted or otherwise established. *Murphy Chair Co v American Radiator Co*, 172 Mich 14, 28; 137 NW 791 (1912). However, an easement may be lost through abandonment. *Goodman v Brenner*, 219 Mich 55, 60; 188 NW 377 (1922). An easement is abandoned when the owner of the easement relinquishes it with the intention of releasing his or her right to the easement. *Id.* After the easement is abandoned, the unencumbered fee simple interest in the land previously burdened by the easement remains in the titleholder. *Dep't*

*of Natural Resources v Carmody-Lahti Real Estate, Inc,*
472 Mich 359, 388; 699 NW2d 272 (2005).

Pursuant to MCL 224.18(3), when a board of county
road commissioners abandons a road, "the road or part
of the road shall cease to exist as a public highway . . . ."
The treatise, Michigan Civil Jurisprudence, considering
the law of easements in the context of roads dedicated
to public use and then abandoned, characterizes the
general rule as follows: "Upon a vacation or abandon-
ment of the street by the public, the fee of the abutting
owners becomes free of the easement, which is thereby
extinguished and terminated."[7] 12 Michigan Civil Ju-
risprudence, Highways and Streets, § 222, p 262-263.

The parties do not dispute that the road was not
created pursuant to statutory dedication and accep-
tance and that the county only received an easement
over the property. Easements do not carry title to the
land over which they are exercised and do not dispos-
sess the landowner of its property. *Rusk v Grande*, 332
Mich 665, 669; 52 NW2d 548 (1952). Accordingly, the
county did not acquire title to the land under the road,
and title to the land under the road remained with the
private owner. When the road commission abandoned
the road in 1997, the owners of the land under the road
retained title to this property free of the public ease-
ment.

Our Supreme Court has long held that

> a conveyance of land bounded on a highway, street, or alley
> carries with it the fee to the center thereof, subject to the
> easement of public way, provided the grantor at the time of
> conveyance owned to the center and there are no words in

---

[7] MCL 224.18, which describes the circumstances under which, and the
procedures by which, a county road may be abandoned, does not explicitly
state which party receives title in fee to the abandoned parcel.

> the deed showing a contrary intent . . . . [*Loud v Brooks*,
> 241 Mich 452, 456; 217 NW 34 (1928).]

Although our Supreme Court recognized the common-law rule that, in the absence of a contrary intent, the adjoining landowners own title to land to the center of a road, the language of the deed still controls. "The general rule is that courts will follow the plain language in a deed in which there is no ambiguity." *Farabaugh v Rhode*, 305 Mich 234, 240; 9 NW2d 562 (1943).

> "[I]t is the duty of the court to construe a deed as it is written, and if a deed is clear and unambiguous, it is to be given effect according to its language, for the intention and understanding of the parties must be deemed to be that which the writing declares. The meaning of the words used, and not what the parties may have intended by such language, is controlling." [*Gawrylak v Cowie*, 350 Mich 679, 683; 86 NW2d 809 (1957), quoting 26 CJS, Deeds, § 86, p 828.]

If the deed, on its face, indicates that a grantee has received title to the land adjacent to a road, but not to the land under a road, the terms of that deed must be enforced.

Accordingly, to determine who owns title to the land under Keystone Road, we must consider the terms of the deeds in the chains of title for plaintiff's and defendant's parcels to determine if each grantor in the chain of title for each party's land intended to convey the land under the road and, if so, whether that grantor had title to that land when making that conveyance.

As discussed earlier, the metes-and-bounds description of the property that Tannewitz transferred to Cherryland specifically excluded the transfer of any portion of the property under the road. When Tannewitz sold her property to the Industrial Fund, though, she transferred to the Industrial Fund title to her

property in the quadrant in which the parties' parcels are located, except for her property located south and east of the road. Accordingly, title to the land under the road vested in the Industrial Fund. Yet when the Industrial Fund transferred title of its property northwest of Keystone Road to Essex, the metes-and-bounds description of the property transferred ended at the northwest right-of-way line, specifically excluding any portion of the property lying under the road. Accordingly, at the time the road was abandoned, the Industrial Fund held title to the land under it. When the road commission abandoned the road, the Industrial Fund continued to hold title to the property, but this land was no longer burdened by the public easement.

However, defendant purchased the interest that the Industrial Fund had in the access route (and, as a precautionary measure, also acquired any residual interest that Ruth Anna's sons and heirs might have had in the route). Because defendant purchased the property interest of every entity holding an interest in the access route, defendant now has fee title to the access route. Accordingly, the trial court erred when it split the road down the center and quieted title to each half of the road to the adjoining landowner. Title to the access route on both sides of the centerline should have been quieted in defendant.

We also note that defendant does not have title to any portion of the road other than the access route. Ruth Anna's sons and the Industrial Fund only transferred their interests in the property within the access route to defendant. Although Cherryland's deed transferring its property to defendant included the parcel between the centerline and the southeast right-of-way line of the road and southwest of the access route in its property description, Cherryland never had title to this

parcel and, therefore, had no property interest to transfer to defendant. Accordingly, the trial court erred when it quieted in defendant's favor title to the property between the centerline and the southeast right-of-way line and southwest of the access route.

II

On cross-appeal, plaintiff argues that the trial court erroneously concluded that neither party had a private easement for ingress and egress across any part of the road owned by the other party. Specifically, plaintiff maintains that, because it owns land abutting the road, it retained a private easement across the road after the road commission abandoned it. We do not agree. This is a question of law that we review de novo. See *Fraser Twp v Linwood-Bay Sportsman's Club*, 270 Mich App 289, 293; 715 NW2d 89 (2006).

Plaintiff asserts that it has an easement over the road on the basis of the doctrine of estoppel. However, this claim of estoppel fails because plaintiff does not explain how the doctrine applies in this situation.

> An estoppel arises where: (1) a party by representation, admissions, or silence, intentionally or negligently induces another party to believe facts; (2) the other party justifiably relies and acts on this belief; and (3) the other party will be prejudiced if the first party is permitted to deny the existence of the facts . . . . [*Cook v Grand River Hydroelectric Power Co, Inc*, 131 Mich App 821, 828; 346 NW2d 881 (1984).]

However, plaintiff provides no evidence indicating that defendant induced it to believe that it had an easement over the road or that it relied on this belief. Conversely, the applicable deeds indicate that plaintiff did not have title to the land under the road, and plaintiff does not otherwise present testimony or documentation indicat-

ing that it had, or reasonably believed that it had, a private easement over the road.

Instead, plaintiff observes that owners of lots adjoining platted streets retain private easement rights over these streets after their abandonment by public authorities. It argues that this Court should expand this rule to conclude that the owner of a lot adjoining an unplatted road should also retain private easement rights over the road after its abandonment. We disagree. The purchaser of property recorded in a plat receives both the interest described in the deed and the rights indicated in the plat. *Kirchen v Remenga*, 291 Mich 94, 102-110; 288 NW 344 (1939); *Fry v Kaiser*, 60 Mich App 574, 577; 232 NW2d 673 (1975). Further, "[a] grantee of property in a platted subdivision acquires a private right entitling him ' "to the use of the streets and ways laid down on the plat" . . . .' " *Nelson v Roscommon Co Rd Comm*, 117 Mich App 125, 132; 323 NW2d 621 (1982), quoting *Rindone v Corey Community Church*, 335 Mich 311, 317; 55 NW2d 844 (1952). When a county road commission abandons a public right-of-way, it only relinquishes the *public's* right to use that road, street, or easement. See MCL 224.18(3). By bestowing the right to use streets in a subdivision on the owners of lots in that subdivision, the plat gives these owners a right to use these streets that is independent of the public's right to use these streets once they are dedicated for public use. Accordingly, if the platted streets in a subdivision are abandoned for public use, the lot owners still retain a separate, private right to use the streets in that subdivision. Essentially, the lot owners retain an independent easement over the streets formerly dedicated for public use, which is unaffected by the road commission's abandonment of these streets.

But the owners of land adjoining unplatted roads
dedicated for public use do not necessarily have ease-
ments or other property rights to the roads or the
underlying land, besides the general rights that they, as
members of the public, have to use these roads. Accord-
ingly, when an unplatted road is abandoned and the
public's right to use the road is relinquished, an adjoin-
ing landowner may only use the abandoned road if it
has an independent easement right or other property
interest in the land under the road.

However, as discussed earlier, plaintiff fails to estab-
lish that it has private ingress and egress rights to its
property from the disputed portion of Keystone Road.
Specifically, the applicable deeds do not indicate that
plaintiff received fee title to or easement rights in any
portion of the road, and plaintiff presents no other
evidence indicating that it had been granted private
easement rights to the road. Further, plaintiff fails to
argue that it has an easement to its property over the
road by operation of law.[8] See *Chapdelaine v Sochocki*,
247 Mich App 167, 172; 635 NW2d 339 (2001). Accord-
ingly, the trial court did not err when it concluded that
neither party has a private easement for ingress and
egress over the portion of the road held by the other
party.

---

[8] Easements created by operation of law include easements of necessity
and easements by implication. These easements are often created when a
parcel is landlocked or an easement across another's property is other-
wise necessary to access the parcel. See *Chapdelaine v Sochocki*, 247
Mich App 167, 172; 635 NW2d 339 (2001); *Schmidt v Eger*, 94 Mich App
728, 731; 289 NW2d 851 (1980). The abandoned portion of Keystone
Road apparently is a convenient means of access to both plaintiff's and
defendant's properties. However, plaintiff has other means of ingress and
egress to its property, and fails to argue whether access to its property by
way of Keystone Road is sufficiently necessary to establish an easement
by operation of law.

The trial court's order quieting title to the disputed portion of abandoned Keystone Road is reversed. The trial court's holding that neither party has easement rights of ingress and egress over the property held by the other party is affirmed. The case is remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.