# STATE OF MICHIGAN

# COURT OF APPEALS

RENEE B. LAFAVE, SHIRLEY ZIMMER,
RONALD PROCTOR, and JOANN M.
PROCTOR,

          Plaintiffs/Counter-Defendants-
          Appellees,

and

LAWRENCE R. MCCALEB,

          Plaintiff,

v

IONIA COUNTY ROAD COMMISSION
CHAIRPERSON, JOHN BUSH, STATE
TREASURER, CHARLES LLOYD BABCOCK,
DAWN KONENSKI, ROGER KONENSKI,
LEON PLATTE TRUST, ALICIA BETZ,
MEDFORD BAILEY, ROBERT ZIMMER,
TRACY ANTHONY, DANIEL R. ZIMMER,
JODIE L. ZIMMER, DAWN ALDRICH,
PATRICIA LIPPINCOTT TRUST, JOHANNA
PARSHALL, MICHELLE DROSTE, EUGENE
DROSTE, DIRECTOR OF DEPARTMENT OF
NATURAL RESOURCES, CONSUMERS
ENERGY CO., AT&T, HOMEWORKS TRI-
COUNTY ELECTRIC CO-OP, TOWNSHIP OF
LYONS, IONIA COUNTY ROAD
COMMISSION, DIRECTOR OF DEPARTMENT
OF LICENSING AND REGULATORY
AFFAIRS,

          Defendants,

and

SALLY N. COOK,

          Defendant/Counter-Plaintiff,

UNPUBLISHED
January 27, 2015

No. 315439
Ionia Circuit Court
LC No. 2010-027799-CH

-1-

and

MOLLY E. KANDLE-KOST and JAMES KOST,

              Defendants/Counter-Plaintiffs-
              Appellants.

---

Before:  RONAYNE KRAUSE, P.J., and WILDER and STEPHENS, JJ.

PER CURIAM.

In this neighbor dispute case, over the course of lengthy and tortuous litigation, the various parties sought to acquire title to strips of property within the Electric Park Subdivision in Lyons Township, Ionia County.  When the Electric Park Amusement Company plat was recorded in 1922, numerous unnamed "drives" were platted throughout, many of which, it appears, were never seriously used as such, or at least not completely.  The instant litigation centered around claims to portions of what are now referred to as Evelyn Drive and Weberta Drive.  Relevant to the instant appeal, defendants Molly Kandle-Kost and James Kost (the Kosts) own a block of lots on the south side of Weberta Drive, and plaintiff Renee LaFave owns a number of lots on the opposite side of Weberta Drive but also contiguously to the east of the Kosts' lots.  The trial court vacated the portion of Weberta Drive touching the Kosts' and LaFave's lots, with title to the vacated land reverting to the abutting property owners.  Consequently, LaFave's lots on opposite sides of Weberta Drive became contiguous, cutting off the Kosts' lots from accessing the street further to the east over Weberta Drive.  The Kosts appeal that vacation, arguing that by law they continue to enjoy a private easement to access their property over Weberta Drive.  We affirm.

We perceive little good that can be achieved by recounting the twisted and contentious history of this matter.  The Kosts do not object to the vacation of the relevant portion of Weberta Drive as a public roadway, going so far as to say that they "in fact welcome" the abandonment of any interest therein held by the general public.  The Kosts contend that they actually used Weberta Drive regularly, if infrequently, to access their property, and in addition the abandonment of the public's rights does not result in the evaporation of their own rights as lot owners.[1]  We will not consider whether the trial court's vacation of Weberta Drive was proper in the abstract, but rather constrain ourselves to the issue posed by the Kosts:  whether they possess a remaining easement interest in the use of Weberta Drive over what would otherwise now be LaFave's property.

---

[1] The trial court specifically found that the Kosts' property would not be land-locked as a result of the vacation of Weberta Drive.  The Kosts do not appeal that portion of the trial court's opinion and order, and in light of their access via Evelyn Drive we would in any event reject any argument that they are entitled to an easement by necessity over Weberta Drive.

-2-

The owner of a lot abutting a public roadway possesses three distinct interests in the land under that roadway:

> 1. As one of the general public.
>
> 2. As owner of the reversionary interest to the center of the street.
>
> 3. As owner of a lot, possessed of the right of ingress and egress to and from the street. [*2000 Baum Family Trust v Babel*, 488 Mich 136, 152; 793 NW2d 633 (2010), quoting *Detroit City R Co v Mills*, 85 Mich 634, 653; 48 NW 1007 (1891) (opinion by GRANT, J.).]

There is no dispute here that the interest of the general public was properly and validly vacated, and there can be no serious dispute that the parties therefore came into full ownership of their reversionary interests to the center of the street. For LaFave, who owned lots on both sides of Weberta Drive, that meant she came to own the entirety of the roadway between those lots. The Kosts assert that their claimed easement rights entitle them to traverse that strip of LaFave's property.

We first note that the trial court declined to award the Kosts a prescriptive easement based on its factual finding that the Kosts had not in fact regularly used Weberta Drive. Specifically, the trial court "d[id] not find the Kosts' testimony that they used Weberta Drive up to a dozen times or more per year credible," but rather found credible contrary testimony to the effect that Weberta Drive had not been regularly used by anyone. Trial courts have long been entitled to great deference regarding factual findings, especially where the relative credibility of witnesses is at issue. *McGonegal v McGonegal*, 46 Mich 66, 67; 8 NW 724 (1881); *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989). The Kosts have simply not presented us with an adequately convincing argument, and the record fails to show, that the trial court's factual finding in this regard was mistaken. We will not disturb the trial court's finding that the Kosts are not entitled to a prescriptive easement over Weberta Drive.

We are not so inclined to agree with the trial court's opinion that the relevant portion of *2000 Baum Family Trust* was non-binding dicta. Even if not necessarily dispositive of the matter at hand, the discussion entailed a court of last resort intentionally taking up, discussing, and deciding a question that was relevant to the controversy at issue in the case, making it binding on us. See *Carr v City of Lansing*, 259 Mich App 376, 383-384; 674 NW2d 168 (2003). Furthermore, our Supreme Court explained that this third right is derived from *private* rights conferred as between grantors and grantees of property by deeds referring to plats. *2000 Baum Family Trust*, 488 Mich at 157. Long-standing law establishes "that the platting and sale of lots constitute a dedication of streets, etc., delineated on the plat, as between grantors and the purchasers from them." *Pulcifer v Bishop*, 246 Mich 579, 582; 225 NW 3 (1929). Consequently, rights conferred upon lot owners by a plat including their property are private and independent of whatever rights the public may or may not have. *Nelson v Roscommon Co Road Comm*, 117 Mich App 125, 132; 323 NW2d 621 (1982).

Nevertheless, the history of this third right indicates that it is not quite as expansive as the Kosts appear to suggest. Such private rights are not necessarily affected by the extinguishment

of public rights. *Nelson*, 117 Mich App at 132-133. They are, however, not inviolate or inevitable, being inherently creatures of what is actually specified in the relevant deeds and plats. See *State Highway Comm v Sandberg*, 383 Mich 144, 149-150; 174 NW2d 761 (1970); *Fry v Kaiser*, 60 Mich App 574, 577; 232 NW2d 673 (1975). That right, in other words, is a product of a transaction between the lot owner (or the lot owner's predecessor in interest) and the platter. See *Kirchen v Remenga*, 291 Mich 94, 102-112; 288 NW2d 344 (1939). While the right has been referred to as an "easement" in various cases, see *Minerva Partners v First Passage*, 274 Mich App 207, 219; 731 NW2d 472 (2007), the discussion in *Kirchen* suggests that the precise nature of the right is not actually so clear. *Id*. Nonetheless, an easement is a right to use land belonging to someone else for a particular purpose without otherwise abating that other owner's ownership. *Schadewald v Brule*, 225 Mich App 26, 35-36; 570 NW2d 788 (1997). Consequently, we cannot entirely disagree with the practice of referring to the right as an easement.

That does not mean that the Kosts' use, or nonuse, of Weberta Drive is irrelevant. The Kosts accurately point out that the mere nonuser of an easement created by a grant is insufficient to extinguish that easement, although sufficiently lengthy nonuse may constitute part of the requisite manifestation of intent to abandon. *Goodman v Brenner*, 219 Mich 55, 60-61; 188 NW 377 (1922). In *Kirchen*, our Supreme Court noted that the easement right at issue had some basis in estoppel, even though title to land cannot pass through estoppel. *Kirchen*, 291 Mich at 109-110. Significantly, if the grantor of a right to use land may not equitably revoke that right, the effective result constitutes an easement. *Id*.; *Day v Walden*, 46 Mich 575, 584-585; 10 NW 26 (1881). Consequently, such an easement created by estoppel may also be extinguished by estoppel. *Day*, 46 Mich at 584-585; *Crew's Die Casting Corp v Davidow*, 369 Mich 541, 543-544; 120 NW2d 238 (1963). In our opinion, permitting the owners of property to develop not only their own land but also an entire community in reliance on an easement right not being exercised, either by the present owner of a dominant estate or that owner's predecessors in interest, could in time work to estop that owner from doing so in the future.

Additionally, the holder of an easement may not increase or add to the burden it imposes on the servient estate. *Schadewald*, 225 Mich App at 36. This is significant because it is obvious from the Electric Park Amusement Company plat that only two of the Kosts' lots abut Weberta Drive; consequently, it would appear that the Kosts could not use Weberta Drive to access any of the rest of their parcels without overburdening whatever easement rights they might have. See *Id*. at 38-39. Consequently, their garage that opens on both sides, purportedly to permit them to enter on one side from Evelyn Drive and leave on the other to Weberta Drive, is of dubious relevance, because any easement right they have over the land under Weberta Drive after its public abandonment would not permit them to do so. As noted, their historical nonuse of the easement can be used to explain otherwise ambiguous actions, and here, we have no reason to doubt the trial court's findings that the garage would readily facilitate the Kosts' access to the water and otherwise functionally benefit them without making use of the easement. We therefore find no clear error in the trial court's finding that the garage does not undermine any abandonment by the Kosts of the easement.

The Land Division Act (LDA), MCL 560.101 *et seq*, under which the trial court may order a plat changed, is not a vehicle for affecting substantive property rights, but rather reflecting them. *Tomecek v Bavas*, 482 Mich 484, 496; 759 NW2d 178 (2008). The LDA is thus

inapplicable unless there has already been legal recognition of a property right that deviates from what is depicted in the plat. *Beach v Township of Lima*, 489 Mich 99, 102; 802 NW2d 1 (2011). However, this Court and our Supreme Court have both historically found it critical to assess what *practical* effect such a change would have on objecting lot owners. *Westveer v Ainsworth*, 279 Mich 580, 584-585; 273 NW 275 (1937); *Vander Meer v Ottawa Co*, 12 Mich App 494, 496-497; 163 NW2d 227 (1968). Our Supreme Court noted that it would not be decisive whether a lot owner held a technical right or easement, *Westveer*, 279 Mich at 584, and this Court put considerable stock in the fact that the lot owners at issue had actually put their easement right to use. *Vander Meer*, 12 Mich App at 496-497. This, of course, is entirely appropriate as a bulwark against the dead hand of a long-since departed platter from upsetting the apple cart of the actual and real development of property by the people who have actually lived there and transformed a piece of paper into homes, businesses, parks, and the like. In other words, plats may be corrected under the LDA to reflect reality.

As discussed, the trial court found not credible the Kosts' claims to have actually used Weberta Drive, and they have failed to persuade us that the trial court was clearly mistaken in so finding. As noted, most of the Kosts' parcels could not be served by any residual easement they might hold after the public abandonment of Weberta Drive, but the Kosts have adequate access to all of their parcels over Evelyn Drive. Additionally, the trial court recounted a history of antisocial behavior on the part of the Kosts, which when viewed in the aggregate forms a pattern strongly suggesting that their interest in Weberta Drive was a sham and merely an excuse to continue antagonizing their neighbors. Indeed, their historical nonuse of the easement, coupled with their apparent desire to prevent anyone else from using the easement rather than any genuine desire to use it themselves, constitutes an overt act manifesting an intent that the easement be abandoned. Their clear desire for *exclusive* use of the easement, while at the same time not actually using it, is under the circumstances incompatible with the nature of the right and shows that they intend for the easement to cease to exist.[2]

In summary, we disagree with the trial court's legal assessment that the relevant portion of *2000 Baum Family Trust* was not binding. In principle, the public abandonment of Weberta Drive would, all other things being equal, leave the Kosts with a remaining private easement right to continue making use of the land that used to be Weberta Drive for the historical purpose to which Weberta Drive was intended to be put. However, that right is not an absolute one. The trial court found as a factual matter, and we have no cause to disagree, that the Kosts not only did not actually use the easement, but acted in a manner more indicative of a desire to preclude anyone else from using it. We agree with the trial court that the outcome of this matter would differ if the Kosts' property would be land locked without a right to traverse the land platted as Weberta Drive. We find no clear error in the trial court's finding that the Kosts will not be inconvenienced by losing a technical right that they never exercised and, based on their actions

---

[2] To be clear, we do not hold that the Kosts abandoned the easement through nonuse, but rather that their nonuse combined with other circumstances of the situation explains their actions as manifesting an intent to abandon. Such nonuse "is an important fact to be considered in connection with [their] other acts in determining [their] intention." *Goodman*, 219 Mich at 60.

rather than their words, that they desired to terminate in any event. By a combination of estoppel and overt acts, we conclude that the Kosts abandoned any easement rights they might have had remaining in the property that was platted as Weberta Drive.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Cynthia Diane Stephens