# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

RENEE B. LAFAVE, SHIRLEY ZIMMER, RONALD J. PROCTOR, and JOANN M. PROCTOR,

        Plaintiffs/Counter-Defendants-Appellees,

v

IONIA COUNTY ROAD COMMISSION CHAIRPERSON, LAWRENCE R. MCCALEB, IONIA COUNTY DRAIN COMMISSIONER, LYONS TOWNSHIP SUPERVISOR, DAWN KONENSKI, ROGER KONENSKI, ALICIA BETZ, MEDFORD BAILEY, ROBERT ZIMMER, TRACY ANTHONY, DANIEL R. ZIMMER, JODIE L. ZIMMER, DAWN ALDRICH, PATRICIA M. LIPPINCOTT as Trustee of PATRICIA M. LIPPINCOTT TRUST, JOHANNA PARSHALL, MICHELLE DROSTE, EUGENE DROSTE, DIRECTOR OF DEPARTMENT OF NATURAL RESOURCES, CONSUMER ENERGY COMPANY, AT&T, HOMEWORKS TRI-COUNTY ELECTRIC COOPERATIVE, JANET GAMBLE, LONNIE R. REYNOLDS, SHELLY R. REYNOLDS, JOHN G. BAKER, JOHN J. HARRIS, ROSE M. MANNING, and WILLIAM THOMAS,

        Defendants/Cross-Defendants,

and

STATE TREASURER and LEON A. PLATTE as Trustee of LEON A. PLATTE TRUST,

        Defendants,

and

SALLY N. COOK,

UNPUBLISHED
February 1, 2018

No.   336004
Ionia Circuit Court
LC No.   2010-027799-CH

-1-

Defendant/Counter-Plaintiff/Cross-Defendant,

and

TOWNSHIP OF LYONS and IONIA COUNTY
ROAD COMMISSION,

Third-Party Defendants,

and

DIRECTOR OF DEPARTMENT OF LICENSING
AND REGULATORY AFFAIRS,

Defendant/Cross-Defendant/Third-Party Defendant,

and

MOLLY E. KANDLE-KOST and JAMES KOST,

Defendants/Counter-Plaintiffs/Cross-Plaintiffs/Third-Party Plaintiffs-Appellants.

Before: MARKEY, P.J., and SHAPIRO and GADOLA, JJ.

PER CURIAM.

Defendants-appellants Molly E. Kandle-Kost and James Kost (the Kosts) appeal as of right the Ionia Circuit Court's order on remand that determined their easement rights in Weberta Drive, a vacated road in the platted subdivision in which they live. The Kosts argue that the trial court erred by ruling that they had abandoned their easement interests. We affirm.

## I. FACTS

Plaintiffs-appellees commenced this action in 2010 to vacate a portion of the recorded plat of Electric Park Amusement Company, located in Lyons Township, Ionia County, known as Weberta Drive, and to determine the rights of the neighbors to Weberta Drive, a dedicated drive for public use that never was used by the public as a roadway. After two years of litigation, and the trial court's disposition of the parties' various claims, cross-claims, and counterclaims, only a dispute between plaintiff Renee LaFave and the Kosts remained respecting their competing interests in Weberta Drive. The trial court held a bench trial on the remaining dispute on October 10, 2012.

At trial, the Kosts testified that they used Weberta Drive on average a dozen times or more each year. They testified that they intended to continue using Weberta Drive, that they hoped to improve Weberta Drive by putting gravel on it, and that they hoped their neighbors would share the expense of doing so. They admitted that they routinely used another platted roadway in the development, Evelyn Drive, to access their property. However, they built their garage with two doors so that they could drive in from the Evelyn Drive side and exit to the Weberta Drive side of their property to take their boat in and out of the river adjacent to their property. Although the Kosts claimed use of Weberta Drive, James Kost conceded that untrimmed trees grew on it. He also admitted that he personally did not drive on it because he had no driver's license.

The Kosts also contended that access to Weberta Drive was a matter of their family's safety. The Kosts had a house fire during 2009, and at that time access via Weberta drive was blocked by a fence erected by LaFave's predecessor. The fire trucks accessed the Kosts' house via Evelyn Drive and extinguished the fire, but the portion of the house adjacent to Weberta Drive burned to the foundation. Lyons Township Fire Chief Lyndon Randall testified that Weberta Drive's present condition was unsuitable to drive fire trucks to the Kosts' house.

Plaintiff Ronald Proctor testified that Weberta Drive runs straight through his property. He testified that since he bought his property in 2004, Weberta Drive has rarely been used. In fact, Proctor testified that his driveway where he usually parks his car is actually on what would be Weberta Drive if it were developed as a roadway. Proctor testified that he had seen neighbors use Weberta Drive only a few times and stated that, contrary to Molly Kost's testimony, he had never seen her use it.

LaFave and her partner, D. J. Freeman, also testified that no one in the neighborhood used Weberta Drive to access their properties, and everyone instead used Evelyn Drive. LaFave denied that the Kosts drove on Weberta Drive, and testified that when she bought her property in 2007, she did not know that Weberta Drive existed because a fence cut across it on her property. At that time, Weberta Drive was nothing more than a private grassy lawn and LaFave had believed that her lots on both sides of Weberta Drive were one contiguous property and had no idea that the lots were separated by the undeveloped Weberta Drive. She further testified that she wanted to build a house on her lots north of Weberta Drive but discovered that she needed four contiguous lots to do so. LaFave also testified that the Kosts had threatened her and Freeman.

The parties agreed that Weberta Drive should be vacated as a public road, but the question remained whether the Kosts retained an easement for use of Weberta Drive after it was vacated as a public road. At the conclusion of the bench trial, the trial court issued an opinion finding that both LaFave and the Kosts had multiple lots that abutted within the plat and both parties accessed their properties via Evelyn Drive. The trial court further found that Weberta Drive was a grassy footpath with no visual signs of ever having regular traffic use. The trial court also found that since the Kosts had lived in the neighborhood, a history of unrest existed. LaFave's predecessors were involved in a property dispute with the Kosts in 1994 over Evelyn Drive and Shore Drive. That dispute had been resolved by a consent judgment that the Kosts then ignored by continuing to block Evelyn Drive and Shore Drive despite the agreed-upon resolution.

The trial court held that the facts of the case did not support reserving an easement in Weberta Drive for the Kosts. The trial court noted that it did not find the Kosts credible when they testified that they used Weberta Drive a dozen times or more each year, and instead found credible plaintiffs' testimony that Weberta Drive was rarely used. The trial court found no merit in the Kosts' concern for firetruck access via Weberta Drive because the fire department had no problem accessing the Kosts' property via Evelyn Drive. The trial court also found no merit to the Kosts' argument that they rebuilt their house to have a two-doorway garage for access to Weberta Drive, observing that even without an easement over Weberta Drive, the Kosts would still have the ability to use their garage's back door to access their backyard and the river, and still had ingress and egress via Evelyn Drive.

The trial court also found that the Kosts had not conducted themselves in a neighborly manner, and that granting the Kosts an easement was untenable because it would inevitably result in additional neighborhood conflict. The trial court opined that the Kosts had come to court with unclean hands because they had taken a contradictory position in their 1994 dispute with LaFave's predecessor by claiming that the platted roads, including Weberta Drive, had never been used as roads and at most were private driveways. The trial court, therefore, held that granting an easement in the vacated Weberta Drive was not warranted nor justified from an equitable standpoint. The trial court ordered that Weberta Drive was vacated and a revised plat was to be prepared and recorded as required under MCL 560.229, § 229 of the Land Division Act (LDA).

The Kosts appealed to this Court, which affirmed the decision of the trial court. *LaFave v Ionia Co Rd Comm Chairperson*, unpublished opinion per curiam of the Court of Appeals, issued January 27, 2015 (Docket No. 315439). This Court explained that by "a combination of estoppel and overt acts, we conclude that the Kosts abandoned any easement rights they might have had remaining in the property that was platted as Weberta Drive." *Id*. at 4. The panel clarified in a footnote as follows:

> To be clear, we do not hold that the Kosts abandoned the easement through nonuse, but rather that their nonuse combined with other circumstances of the situation explains their actions as manifesting an intent to abandon. Such nonuse "is an important fact to be considered in connection with [their] other acts in determining [their] intention." [*Id*. at 4 (citation omitted).]

The Kosts sought leave to appeal this Court's decision to the Michigan Supreme Court. In lieu of granting leave, the Michigan Supreme Court vacated in part this Court's opinion and remanded for limited further proceedings in the trial court. The Michigan Supreme Court order provides:

> On order of the Court, the application for leave to appeal the January 27, 2015 judgment of the Court of Appeals is considered and, pursuant to MCR 7.305(H)(1), in lieu of granting leave to appeal, we VACATE that part of the Court of Appeals opinion applying the law of abandonment to the facts of this case. The Court of Appeals erred by finding that the facts on record are sufficient to demonstrate defendants Molly Kandle[-]Kost and James Kost intended to abandon their easement rights in Weberta Drive, particularly in light of the failure

-4-

of the trial court to make any findings on abandonment or the precise nature of defendants' property right. We therefore REMAND this case to the Ionia Circuit Court for findings on the nature of any property right retained by defendants Molly Kandle-Kost and James Kost in Weberta Drive. Once that court has determined the nature of that right, it should determine whether an abandonment analysis is applicable and, if it is applicable, make any necessary findings regarding whether defendants intended to abandon their property rights in Weberta Drive. See *Dep't of Natural Resources v Carmody-Lahti Real Estate, Inc*, 472 Mich 359, 385; 699 NW2d 272 (2005). In all other respects, leave to appeal is DENIED, because we are not persuaded that the remaining question presented should be reviewed by this Court. [*LaFave v Ionia Co Road Comm Chairperson*, 498 Mich 967 (2016).]

On remand, in accordance with our Supreme Court's remand order, the trial court determined the nature of the Kosts' interest in Weberta Drive. The trial court held:

Based upon this analysis, the [Kosts] retain, as owners of a lot, the right to ingress and to egress to and from the street even though Weberta Drive has been vacated in regards to the public interest.

The trial court then addressed whether the Kosts had abandoned their right to ingress and egress to and from Weberta Drive, considering the abandonment analysis set forth in *Carmody-Lahti*, as directed by the remand order. Reflecting upon the facts established at the bench trial, the trial court found that although the Kosts claimed use, intended use, and attempted use of the easement, the facts dictated a contrary conclusion. The trial court stated:

. . . there was not only nonuse of the property for ingress and egress as evidenced by the grass and shrubs that grew there, the intimidating and bullying conduct of the Kosts preventing others from accessing Weberta to the lake constitutes affirmative action on their part that they wished to preclude, and essentially abandon, the use of Weberta Drive. As they indicated in their prior pleadings from another action in this Court, Weberta Drive was on paper only as the neighborhood as a whole ignored and failed to develop or use the platted Weberta Drive. The fire marshall's testimony also made it clear that Weberta Drive was never even considered due to it[s] lack of development as a mode of access to the Kost property when their home burned down.

The trial court noted that it had found the Kosts' trial testimony lacking in credibility, and also that it found that the Kosts had come to the trial court with unclean hands given the Kosts' past numerous efforts to prevent others access and use of Weberta Drive. Consequently, the trial court reaffirmed its previous order. The Kosts now appeal to this Court.

## II. DISCUSSION

### A. LAND DIVISION ACT LAWSUIT

The Kosts first argue that LaFave's 2015 purchase of additional lots in the subdivision retroactively rendered her 2010 lawsuit under the Land Division Act moot. Because this issue is

outside of the scope of our Supreme Court's remand order, and therefore properly outside of the scope of the trial court's opinion on remand, we decline to reach this issue.

One of the arguments previously presented before the trial court in the long history of this case was LaFave's argument that it was necessary for the trial court to correct the plat to reflect the abandonment and nonuse of Weberta Drive, so that LaFave could use her property to construct a new home. In its 2012 order, the trial court vacated Weberta Drive, thereby resolving this issue. This Court affirmed the trial court's order.

The Michigan Supreme Court then remanded this matter to the trial court with specific, clear instructions for further proceedings. *LaFave*, 498 Mich 967. Our Supreme Court ordered that the trial court (1) determine the nature of any property right retained by the Kosts in Weberta Drive, (2) determine whether an abandonment analysis was applicable to this case, and if so, (3) make any necessary findings as to whether the Kosts intended to abandon their property rights in Weberta Drive. In all other respects, the Michigan Supreme Court left this Court's decision and the decision of the trial court undisturbed. *Id*.

On remand to the trial court, the Kosts presented evidence that LaFave had since purchased additional lots that enabled her to build on her land without the need of vacating Weberta Drive, thus eliminating what had been an argument in favor of LaFave's position. In its opinion on remand, the trial court declined to disturb its earlier ruling on this issue.

When an appellate court remands a case with clear instructions, the lower court is obligated on remand to strictly comply with the mandate of the appellate court and it is improper for a lower court to exceed the scope of the order. *K & K Constr, Inc v Dep't of Environmental Quality*, 267 Mich App 523, 544-545; 705 NW2d 365 (2005). In this case, the trial court properly followed the remand order of our Supreme Court and limited its decision on remand to the scope of the remand order. Had the trial court revisited the issue of the decision to vacate Weberta Drive under the Land Division Act, as urged by the Kosts, the trial court would have strayed into territory outside of the scope of the remand order. Accordingly, the trial court did not err by refusing to reach this issue and we, likewise, decline to reach this issue as outside the scope of our Supreme Court's remand order.

## B. ABANDONMENT OF THE EASEMENT

The Kosts next argue that the trial court erred in ruling that they abandoned their easement interest in Weberta Drive. We disagree.

The trial court's determination of the extent of a party's rights under an easement is a factual one that we review for clear error. *Blackhawk Dev Corp v Village of Dexter*, 473 Mich 33, 40; 700 NW2d 364 (2005). We review de novo the trial court's conclusions of law. *Ligon v Detroit*, 276 Mich App 120, 124; 739 NW2d 900 (2007). A finding is clearly erroneous if there is no evidentiary support for it, or if this Court is left with a definite and firm conviction that a mistake has been made. *Hill v City of Warren*, 276 Mich App 299, 308; 740 NW2d 706 (2007). We give deference to the trial court's special opportunity to judge the credibility of the witnesses. MCR 2.613(C); *Ambs v Kalamazoo Co Road Comm*, 255 Mich App 637, 652; 662 NW2d 424 (2003).

The owner of a lot abutting a public roadway possesses three distinct interests in the roadway, being (1) as a member of the general public, (2) as an owner of the reversionary interest to the center of the street, and (3) as an owner of a lot, possessing the right of ingress and egress. *2000 Baum Family Trust v Babel*, 488 Mich 136, 152; 793 NW2d 633 (2010). Thus, owners of lots within a subdivision adjoining platted roads, where a county's road commission has abandoned the public's right-of-way to the platted roads, retain an easement for ingress and egress independent of the public's right. *Minerva Partners, Ltd v First Passage, LLC*, 274 Mich App 207, 219; 731 NW2d 472 (2007).

It is this third right, the lot owner's retention of an independent easement for ingress and egress, that concerns us here. In this case, the interest of the general public in Weberta Drive was validly vacated, and the parties, both LaFave and the Kosts, as owners of land abutting Weberta Drive, came into ownership of their reversionary interests to the center of what had been Weberta Drive where their respective properties adjoined Weberta Drive. Because LaFave owned lots on both sides of Weberta Drive in some places, she thus came to own an interest in the entirety of the roadway between those lots. The dispute at this point is whether the Kosts have easement rights, for ingress and egress, that entitle them to traverse that strip of what is now LaFave's property.

We agree with the trial court's conclusion that the Kosts, as owners of lots adjacent to the vacated Weberta drive, retained the right of ingress and egress through Weberta drive even though Weberta Drive has been vacated and the public no longer has a property interest in Weberta Drive. The remaining issue is whether the trial court correctly determined that the Kosts had abandoned that easement interest.

An easement may be lost through abandonment. In *Minerva Partners*, this Court explained that "[a]n easement is abandoned when the owner of the easement relinquishes it with the intention of releasing his or her right to the easement." *Id*. at 214. Nonuse of the easement alone does not result in abandonment of the easement; our Supreme Court has explained that an easement holder abandons the easement when "non-user [sic] is accompanied by acts on the part of the owner of either the dominant or servient tenement which manifest an intention to abandon, and which destroy the object for which the easement was created or the means of its enjoyment. . . ." *Dept of Natural Resources v Carmody-Lahti Real Estate, Inc*, 472 Mich 359, 385; 699 NW2d 272 (2005) (citation omitted).

In this case, the Michigan Supreme Court directed the trial court on remand to make findings on the nature of any property right in Weberta Drive retained by the Kosts, to thereafter determine if an abandonment analysis is applicable, and if so, to make any necessary findings regarding whether the Kosts intended to abandon their property rights in Weberta Drive. On remand, the trial court correctly determined that after vacation of the public's interest in Weberta Drive, the Kosts retained an easement right in Weberta Drive for ingress and egress. Having determined that the Kosts retained an easement in Weberta Drive, the trial court, apparently concluding that an abandonment analysis applied, then considered the evidence admitted at trial and found that Weberta Drive was not used, noting that the Kosts' testimony that they used Weberta Drive each year lacked credibility. We recognize the trial court's unique opportunity to observe the witnesses appearing before it, and give due deference to the trial court's superior ability to judge their credibility. MCR 2.613(C); *Ambs*, 255 Mich App at 652. Therefore, we

find no clear error in the trial court's findings of fact regarding the Kosts' nonuse of Weberta Drive.

The easement abandonment inquiry does not end with the trial court's nonuse determination, however. As noted, nonuse alone does not result in abandonment of the easement; rather, nonuse must be accompanied by acts on the part of the owner that "manifest an intention to abandon, and which destroy the object for which the easement was created or the means of its enjoyment. . . ." *Carmody-Lahti*, 472 Mich at 385 (citation omitted). In other words, to prove abandonment of an easement, one must show both the intent to relinquish the property right and external acts putting that intention into effect. *Ludington & Northern Railway v Epworth Assembly*, 188 Mich App 25, 33; 468 NW2d 884 (1991). But although nonuse alone does not prove abandonment, lengthy nonuse may be considered together with other acts to sufficiently indicate the requisite intent to abandon an easement. See *Goodman v Brenner*, 219 Mich 55, 60-61; 188 NW 377 (1922). Thus, a party's historical nonuse may be used to explain that party's intent. Further, this Court has sometimes held that use of another road as the only means of ingress and egress, thereby establishing a roadway elsewhere, evidences a clear intent to abandon an easement in the property that is not used as the roadway. See, e.g., *Wurtz v Garno*, unpublished opinion per curiam of the Court of Appeals, issued April 3, 2007 (Docket No. 264702), p 3.[1]

Here, the trial court addressed whether the Kosts indicated their intent to abandon their easement in Weberta Drive, and found that the Kosts' position historically was that Weberta Drive was a road on paper only and that the entire neighborhood had failed to develop or use it. On that basis, the Kosts had prevented others from using Weberta Drive. The trial court found that these actions by the Kosts sufficiently showed their belief and intent that Weberta Drive was not a roadway available for use, and thus demonstrated a clear intent to abandon their easement rights.

We cannot say that the trial court clearly erred in its finding. As noted, we recognize the trial court's unique opportunity to observe the witnesses appearing before it, and give due deference to the trial court's superior ability to judge their credibility. MCR 2.613(C). The Kosts rarely, if ever, used Weberta Drive. The witnesses all agreed that in its current condition, Weberta drive would be difficult or impossible to navigate with a vehicle. Further, the Kosts spent many years asserting that Weberta Drive did not exist and was not available for use, going so far as preventing others from using it. The Kosts thereby arguably acted to destroy the object of the easement and of the means of its enjoyment. Meanwhile, apparently encouraged in part by the actions of the Kosts, the entire community including the Kosts regularly used Evelyn Drive for ingress and egress to their properties, establishing a route in lieu of Weberta Drive. We therefore cannot conclude that the trial court clearly erred in finding that the Kosts demonstrated

---

[1] Although unpublished opinions of this Court are not binding precedent, MCR 7.215(C)(1), they may be considered instructive or persuasive. *Paris Meadows, LLC v Kentwood*, 287 Mich App 136, 145 n 3; 783 NW2d 133 (2010).

the requisite intent to abandon their easement interest in Weberta Drive, and that this intent, combined with their nonuse of the property, established abandonment.

## C. UNCLEAN HANDS

Lastly, the Kosts argue that the trial court erred by basing its decision regarding their easement interest in Weberta Drive largely, if not solely, upon its conclusion that the Kosts had unclean hands. We disagree with this characterization of the trial court's ruling on remand.

The trial court, in its order on remand, discussed whether the Kosts abandoned their easement rights in Weberta Drive. In the context of that discussion, the trial court noted that it found the Kosts' testimony to be "self-serving and lacking in credibility." The trial court then explained this assessment by stating "They come to this court with unclean hands. They . . . have engaged in threatening, intimidating and harassing conduct at not only Plaintiff but other plat owners where Weberta Drive would end at the water's edge." A review of the entire opinion by the trial court on remand provides no support of the Kosts' theory that the trial court based its legal conclusions upon the equitable doctrine of unclean hands. Rather, the trial court made these statements to explain its finding that the testimony of some witnesses was less credible than that of other witnesses.

The Kosts also argue that the trial court ruled against their interests because it concluded that they were not "good people" and point to language in the trial court's order on remand in which the trial court ruled against the Kosts "[g]iven the breadth of litigation and the continued need for peace in the neighborhood." We note that this statement by the trial court does not relate to the trial court's ruling regarding the abandonment of the easement; rather this statement by the trial court relates to the trial court's response to the Kosts' argument, addressed earlier in this opinion, that the earlier vacation of Weberta Drive should be nullified because LaFave had since purchased additional lots. The trial court, in declining to revisit that ruling, stated "[g]iven the breadth of litigation and the continued need for peace in the neighborhood, correcting the plat to reflect the nonuse and abandonment of Weberta Drive by not only the Kost[s] but all the neighbors, as evidenced by their collect[ive] actions, is warranted." We find no error in the trial court's assessment of this issue.

Affirmed.

/s/ Jane E. Markey
/s/ Douglas B. Shapiro
/s/ Michael F. Gadola